Shaun H. Crosner (SBN 259065)
scrosner@pasichllp.com
Nicolas A. Pappas (SBN 316665)
npappas@pasichllp.com
PASICH LLP
1230 Rosecrans Avenue, Suite 690
Manhattan Beach, CA 90266
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Anamay M. Carmel (SBN 298080)
acarmel@pasichllp.com
PASICH LLP
10880 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SEMPER FI HOLDINGS SERIES LLC,<br><br>        Plaintiff,<br><br>     v.<br><br>NORTH AMERICAN CAPACITY INSURANCE COMPANY,<br><br>        Defendant. | Case No. CV19-07274 DSF (JPRx)<br>Hon. Dale S. Fischer, Courtroom 7D<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND REFORMATION**<br><br>**DEMAND FOR JURY TRIAL** |

PASICH

Plaintiff Semper Fi Holdings Series LLC ("Semper Fi") complains of Defendant North American Capacity Insurance Company ("North American") and alleges as follows:

## NATURE OF THE ACTION

1. This is a lawsuit by Semper Fi to collect promised coverage under an event cancellation insurance policy issued by North American.  The policy was sold as providing, and was intended to provide, coverage for losses resulting from the cancellation, abandonment, curtailment, postponement, or relocation of the Salute the Troops Music and Comedy Festival (the "Festival").

2. Just weeks before the Festival was scheduled to take place, several local, state, and federal agencies raised safety and security concerns regarding the Festival and made clear that the event could not and would not go forward as planned.  Semper Fi timely notified North American of the need to relocate the Festival and, subsequently, of the substantial losses suffered in connection with the relocated event.  However, instead of honoring its obligations under its policy and the law, North American performed a self-serving, perfunctory investigation into Semper Fi's claim and ultimately denied coverage.  As shown below, North American's position is contrary to the policy it issued, the law, insurance industry custom and practice, and the facts.  Therefore, Semper Fi brings this lawsuit to obtain the benefits due under the policy and for other damages.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332.  There is complete diversity between parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

**FIRST AMENDED COMPLAINT**

# THE PARTIES

5.      Semper Fi is a Delaware limited liability company whose only members are individuals who are citizens of New York and South Carolina.

6.      Semper Fi is informed and believes, and on that basis alleges, that North American is a New Hampshire company, with its principal place of business in New Hampshire.  It is authorized to transact, and is transacting, business in the State of California and the County of Riverside.

7.      Semper Fi is informed and believes, and on that basis alleges, that North American is a member of Swiss Re Corporate Solutions. Semper Fi is informed and believes, and on that basis alleges, that North American and the Swiss Re group of insurance companies are extremely sophisticated and knowledgeable in insuring against event cancellation losses, and in investigating the risks they are insuring.  Semper Fi also is informed and believes, and on that basis alleges, that North American and other Swiss Re insurance companies participate in a wide range of event cancellation insurance programs and hold themselves out as being knowledgeable, experienced, reliable, willing to insure, and capable of insuring, organizers of live events and festivals against the risks of event cancellation and relocation.  Indeed, Swiss Re publicly proclaims that its member companies are "creative" insurers with "world-class risk knowledge," adding that they have "a global team of experienced, empowered underwriters who understand the challenges facing your business." *See* https://corporatesolutions.swissre.com/insurance/ contingency_entertainment_sport/.  Swiss Re further boasts that its insurers' "high net capacity means [they] can provide primary or excess cover for almost any contingency, entertainment or sport risk – from trade fairs to concert tours to major sporting events." *Id*.  Swiss Re also claims that its companies are "responsive and decisive and can offer large net capacity and financial strength." *Id.*  Swiss Re also represents that its "Contingency team provides financial protection for a wide range of risks in the area of contingency and sports PA coverage, backed by solid industry

3

1  knowledge, insurance expertise and a long-term commitment." *See*

2  https://media.swissre.com/documents/contingency_coverage_Web.pdf.

### FACTUAL BACKGROUND

### Preliminary Plans for the Festival

5       8.    In early 2018, plans began for a music and comedy festival that would

6  ultimately become known as the Salute the Troops Music and Comedy Festival (the

7  "Festival").  The Festival was designed to honor active members of the military and

8  veterans.  The concept of the Festival was a multi-day event with musicians,

9  comedians, and other artists performing—with talent interacting with the troops,

10  participating in military activities, and creating other memorable moments.  The

11  event was also designed to bring attention to the conditions of post-traumatic stress

12  and the high rate of suicide among returning soldiers and veterans.

13       9.    Semper Fi assumed primary responsibility for the management of the

14  Festival.  Semper Fi is a holdings series incorporated under Delaware law.  Pursuant

15  to its operating agreement, Semper Fi established Semper Fi Holdings Series LLC,

16  Series 1 (the "Festival Organizers") to organize and produce the Festival.

17       10.    In the early stages of planning, Semper Fi and the Festival Organizers

18  sought out an appropriate venue.  They selected the March Field Air Museum (the

19  "Museum") adjacent to the March Air Reserve Base (the "Base").

20       11.    In a contract dated November 3, 2018, representatives of the Museum

21  agreed to hold the Festival at the Museum adjacent to the Base.  The Festival was

22  scheduled to take place on March 22 and 23, 2019, and the Museum accepted a

23  $25,000 deposit to hold the venue for the event.

24       12.    The line-up for the Festival was finalized in early 2019.  Semper Fi and

25  the Festival Organizers submitted the list of artists who would be performing at the

26  Festival to the Museum on February 6, 2019.  The Festival was to be headlined by

27  legendary rapper Snoop Dogg and emceed by famed comedian Adam Carolla, and

28  the line-up included several other well-known musical artists and comedians.

4

13.     Semper Fi and the Festival Organizers took all appropriate steps and made all necessary arrangements to ensure that the Festival could be held at the scheduled venue on the scheduled dates.  For instance, National Event Management Services was retained to create a security and safety plan for the Festival.  Semper Fi is informed and believes, and on that basis alleges, that National Event Management Services had extensive experience creating security and safety plans for live events, and the security and safety plan proposed for the Festival was similar to those adopted for major musical festivals of similar size in recent years.

14.     Furthermore, on February 8, 2019, the Festival Organizers submitted an application for a Temporary Use Permit (the "TUP") for the Festival.  The TUP is a permit required by the landlord of the Museum.

## Semper Fi's Application for Insurance and the Binders Issued by North American's Agent

15.     In connection with its planning for the Festival, Semper Fi decided to purchase event cancellation coverage to insure against losses resulting from the cancellation, abandonment, curtailment, postponement, or relocation of the Festival.

16.     Semper Fi applied for event cancellation insurance through Ascend Insurance Brokerage ("Ascend"), North American's designated agent with authority to bind North American.  Through the written application and numerous subsequent communications, Semper Fi made clear—and Ascend and North American understood—that the Festival was scheduled to take place at the Museum on March 22 and 23, 2019.

17.     On February 8, 2019, Ascend issued Semper Fi an insurance "binder" that summarized Semper Fi's event cancellation coverage and functioned as Semper Fi's temporary insurance policy until its actual policy was issued.  The February 8, 2019, binder correctly named Semper Fi as the insured under the policy.  However, the binder incorrectly indicated that the Festival would take place at the "March Air Reserve Base"—not the Museum.  A true and correct copy of at least the relevant

5

1  portions of the February 8, 2019, binder is attached hereto as Exhibit A and

2  incorporated herein by reference.

3       18.    After Semper Fi informed Ascend that the venue on the February 8,

4  2019, binder was incorrect, Ascend issued an updated binder on behalf of North

5  American on February 19, 2019, reflecting the correct venue, and still correctly

6  listing Semper Fi as the insured.  The February 19, 2019, binder names the insured

7  event as "Multi-day Music Festival located in Riverside, CA from 3/22/2019 –

8  3/23/2019" taking place at "March Field Air Museum; Riverside, CA 92518."  A

9  true and correct copy of at least the relevant portions of the February 19, 2019,

10  binder is attached hereto as Exhibit B and incorporated herein by reference.

11    **Semper Fi's February 21, 2019 Meeting with Local, State, and Federal**

12          **Agencies and the Subsequent Relocation of the Festival**

13       19.    On or about February 14, 2019, representatives of Semper Fi and the

14  Festival Organizers were asked to attend a meeting at the Museum to go over the

15  site map, safety plan, and other logistics for the Festival.  The meeting took place on

16  February 21, 2019.  Various local, state, and federal agencies were in attendance—

17  including the City of Moreno Valley Police Department, Riverside County Sheriff's

18  Department, Riverside County Fire Department, Cal-Fire, Riverside County Office

19  of Emergency Services, California Highway Patrol, March Air Reserve Base

20  Security Operations and Anti-Terrorism Units, March Air Field Museum Security,

21  and the March Joint Powers Authority.

22       20.    At the February 21, 2019, meeting, representatives of the agencies in

23  attendance voiced various concerns regarding security issues and the overall safety

24  of the event, including:

25       •   The potential for terrorist attacks given the proximity of the event to the

26          March Air Force Base and the marketing of the event to active and

27          veteran members of the armed forces;

28       •   The possibility that event attendees could be injured while walking

6

**FIRST AMENDED COMPLAINT**

across a highway offramp from the parking lot to the Festival instead of using provided shuttle buses;

- The possibility of violence at the event, including the possibility that attendees might attempt to use bike racks as weapons;

- The potential for drug use and other illegal activity at the event; and

- The possibility that event attendees might jump over the fence separating the Festival from the March Air Force Base, threatening the safety of the active military installation at the base.

Although the agencies in attendance at the meeting expressed their continued support for the Festival, they made very clear that—in light of these perceived safety and security risks—there was no realistic chance of the Festival going forward as scheduled on March 22 and 23, 2019.

21.     In Semper Fi's view, the safety and security concerns voiced at the February 21, 2019, meeting—none of which had previously been raised with Semper Fi or the Festival Organizers—were unfounded.  Nevertheless, in light of the positions taken and the concerns voiced by the agencies in attendance at the meeting, Semper Fi and the Festival Organizers were left with no practical choice but to relocate the event.  Accordingly, Semper Fi and the Festival Organizers promptly investigated the few options for alternative venues and, in an effort to mitigate financial losses, immediately began plans to relocate the event to an alternate venue.

22.     Given that the Festival was not going to proceed as scheduled at the Museum, the Festival Organizers abandoned their pursuit of the TUP, which was a venue-specific permit that would not be necessary for the relocated event.

23.     On or about March 3, 2019, the Festival Organizers entered into an agreement to hold the Festival at the Fox Theatre and Glass House in Pomona.

24.     Semper Fi timely notified Ascend and North American of the need to relocate the Festival and advised that it would be submitting a claim for coverage for

7

1  any losses suffered as a result of the event's relocation.  Semper Fi also requested
2  that its coverage be extended to include the relocated event.

3     25.    Semper Fi and the Festival Organizers took all reasonable and
4  necessary steps to ensure the success of the relocated event, including incurring
5  considerable sums to promote the Festival at its new venue.

6     26.    The Festival took place on March 22 through 24, 2019, at the Fox
7  Theatre and Glass House in Pomona.  Unfortunately, and despite Semper Fi's best
8  efforts and intentions, the relocated event resulted in substantial financial losses.
9  Semper Fi is informed and believes, and on that basis alleges, that the Festival
10  would have been highly profitable and successful had it occurred at the Museum on
11  March 22 and 23, 2019, as scheduled.

12  <u>**The Policy Issued by North American**</u>

13     27.    On March 27, 2019, after the Festival had taken place, Semper Fi
14  received a copy of its insurance policy for the first time.

15     28.    North American issued Policy No. COM100072700, with a policy
16  period of February 12, 2019 to March 24, 2019 and a limit of $1,859,440 (the
17  "Policy").  A true and correct copy of at least the relevant portions of the Policy is
18  attached as Exhibit C hereto and is incorporated herein by reference.

19     29.    The Policy obligates North American to "indemnify [the Named
20  Insured], up to the Limit of Insurance, for your loss as a direct result of
21  **cancellation, abandonment, curtailment, postponement,** or **relocation** of the
22  **insured event** to which this insurance applies."  Policy, § I.A.

23     30.    "Relocation" is defined as "the removal of the **insured event** to an
24  alternative **venue**."  *Id.*, § III.7.

25     31.    The Policy requires North American to pay for "the greater of:"
26       **1.** The total of **expenses** incurred, less any recoveries obtained,
27       and less **gross revenue** retained after refunds, whether such
28       refunds are contractual or voluntary; or

8

**2.** The loss of **gross revenue** (including **gross revenue** returned, whether contractual or voluntary) that would have been received had the **insured event** taken place as originally scheduled**,** less any recoveries made and **expenses** not incurred.

*Id.*, § I.C.

32.    The insuring clauses of the Policy state:

In order for insurance to apply to Section I, all of the following conditions must be met:

1. the loss must be the direct result of an unexpected cause beyond your control and any party who is contracted by you to perform a function critical to the successful fulfillment of the Insured Event other than a principal speaker or entertainer.

2. the loss must not be the direct or indirect result of any excluded cause as shown in Section II. –Exclusions of this insurance; and

3. you must comply with all other terms and conditions of this policy.

*Id.*, § I.B.

33.    The Policy also provides "Extra Expense Coverage," explained as:

If a loss applies, this policy is extended to include direct and necessary additional **expenses** incurred by you over and above the total costs that would normally have been incurred to conduct the **insured event** in order to continue the normal operations of the insured event, subject to prior written approval by us. The Limit of Insurance for this coverage is included in the Limit of Insurance shown in the Declarations. However, in the event the Limit of Insurance is exhausted, we will pay an additional limit, up to $100,000 or a higher amount

9

1         if agreed to by us and evidenced by endorsement attached to

2         and forming a part of this Policy.

3  *Id.*, § I.D.

4     34.    Although the Policy generally reflects the coverage summarized in the

5  binders of insurance issued by Ascend, it contains two notable mistakes:

6        a.  Contrary to the binders issued by Ascend, the Policy's declarations

7           page erroneously lists "Semper Fi Productions, LLC" as the named

8           insured under the Policy.  *Id.*, Declarations.

9        b.  Instead of referencing the Museum, the Policy's declarations page

10          incorrectly lists the "Event Description and Date(s)" as the "Salute

11          The Troops Music Festival taking place March 22 – 23, 2019 at ***the***

12          ***Glen Helen Amphitheater in San Bernardino, CA***."  *Id.* (emphasis

13          added).  The Festival was never scheduled to take place at the Glen

14          Helen Amphitheater, and that venue did not appear on either of the

15          binders issued by Ascend.

16     35.    On March 29, 2019, representatives of Semper Fi contacted Ascend

17  regarding the errors in the Policy.  Semper Fi noted that, consistent with the binders

18  of insurance previously issued by Ascend, the named insured under the policy

19  should be Semper Fi Holdings Series LLC (and not Semper Fi Productions,

20  LLC).  Semper Fi also noted that—again, consistent with the binders issued by

21  Ascend—the insured event should be the "Salute the Troops Music Festival taking

22  place March 22-23, 2019 at the March Air Reserve Base, Riverside, CA 92518"

23  (and not the Glen Helen Amphitheater in San Bernardino, CA).  Semper Fi

24  requested that Ascend and North American correct these mistakes.

25     36.    On April 1, 2019, a representative of Ascend confirmed that Ascend

26  had requested the changes from North American.

27     37.    On April 5, 2019, a representative of Ascend sent Semper Fi an e-mail

28  stating: "We received an email from the underwriter stating that due to a current

10

1  active claim they are not making any changes to the policy at this time however,

2  they are in the que [sic] to be processed and we will forward when available."

3  ### North American's Breaches of Its Duties

4  38.    In the days following the Festival, North American retained a third-

5  party loss adjuster, Mark Ballin of Claims Specialists International Ltd. ("CSI"), to

6  investigate Semper Fi's claim for insurance coverage.

7  39.    On April 18, 2019, Nate Parienti, the event organizer for the Festival,

8  wrote to Mr. Ballin at his request to provide additional information about the

9  reasons for relocating the Festival.  In his letter, Mr. Parienti explained what had

10  transpired at and after the February 21, 2019, meeting, and informed Mr. Ballin that

11  Semper Fi had no reasonable choice but to relocate the event.

12  40.    On April 29, 2019, Mr. Ballin responded to Mr. Parienti.  Mr. Ballin

13  requested additional information, including a "copy of Semper Fi's contract with

14  National Event Services and any writing or other materials outlining the security

15  plan for the Festival when it was to be located at March Field Air Museum."  Mr.

16  Ballin also requested that Semper Fi provide the "identity and contact information

17  for the individuals who were in attendance at the 2-21-19 meeting referenced in

18  your 4-18-19 letter."

19  41.    While Semper Fi was in the process of gathering the requested

20  information and documents, Mr. Ballin wrote again on May 3, 2019 to request

21  additional information, including a "copy of and/all [sic] permit applications filed by

22  Semper Fi Productions, LCC [sic] to hold the festival at the March Field Air

23  Museum on March 22 and 23, 2019."

24  42.    On May 24, 2019, Mr. Parienti responded to Mr. Ballin's two letters.

25  Although Mr. Parienti provided responses to some of Mr. Ballin's requests, he

26  informed Mr. Ballin that Semper Fi was still in the process of gathering information

27  to respond to the remaining requests.

28  43.    Without any further word from Mr. Ballin, and without speaking with

11

**FIRST AMENDED COMPLAINT**

1  anyone from Semper Fi or otherwise giving Semper Fi the opportunity to respond to

2  the pending requests, North American cut short its purported "investigation" and

3  denied coverage for Semper Fi's claim.

4      44.    In its June 14, 2019, denial letter, North American cited Semper Fi's

5  failure to obtain a TUP as the primary reason for its denial, asserting that

6      the Festival did not go forward at the [Museum] and was

7      relocated to another venue because the insured failed to

8      make all of the preliminary arrangements essential as a

9      prudent organizer to ensure the event could be held at the

10      [Musuem] which included the failure to obtain the

11      necessary permit for the event.  For these reasons,

12      Exclusion 8. Failure to Make Necessary Arrangements

13      serves to exclude coverage for any costs or losses incurred

14      in changing the venue for the Festival.

15  North American took this position even though the lack of a TUP played no role

16  whatsoever in the Festival's relocation.

17      45.    Furthermore, in its June 14, 2019, letter, North American seized on the

18  fact that the Policy had not been issued to Semper Fi and purported to reserve its

19  rights with respect to the "named insured issue."  North American took this position

20  even though the so-called "named insured issue" was created by North American's

21  mistake, and even though it knew full well that the Policy should have been issued

22  to Semper Fi.

23      46.    As of the date of this complaint, North American has failed and refused

24  to indemnify Semper Fi for the claimed losses.

25      47.    To the extent not waived or otherwise excused because of the acts and

26  conduct of North American or by operation of law, Semper Fi has complied with all

27  terms and conditions precedent in the Policy.  Therefore, Semper Fi is entitled to all

28  benefits of insurance provided by the Policy.

**FIRST AMENDED COMPLAINT**

PASICH

## FIRST CAUSE OF ACTION

### (For Breach of Contract)

48.     Semper Fi realleges and incorporates by reference paragraphs 1 through 47, above.

49.     Implied in the Policy is a covenant that North American would act in good faith and deal fairly with Semper Fi, would do nothing to interfere with Semper Fi's right to receive the benefits due under the Policy, and would give at least the same level of consideration to Semper Fi's interests as it gives to its own interests.

50.     North American also had a duty under the Policy, the law, and insurance industry custom and practice to promptly conduct a full and thorough investigation, including all bases that might support Semper Fi's claim for coverage.

51.     North American has breached its duties under the Policy by, among other things,

a.  Failing and refusing to pay for the claimed losses incurred due to the relocation of the Festival;

b.  Refusing to pay for the amounts reasonably spent to reduce financial losses covered under the Policy, even though the Policy requires "mitigation" of losses and both the Policy and common law obligate North American to pay amounts reasonably incurred in an effort to mitigate loss;

c.  Asserting grounds for disputing coverage that it knows are not supported by, and are contrary to, the terms of the Policy, the law, insurance industry custom and practice, the parties' course of dealings, and the facts;

d.  Failing to conduct an adequate investigation into Semper Fi's claim, and asserting grounds for disputing coverage based on its inadequate investigation;

13

e.  Failing to fully inquire into possible bases that might support coverage for Semper Fi's claim;

f.  By giving greater consideration to its own interests than Semper Fi's interests; and

g.  By otherwise acting as alleged above.

52.    As a direct and proximate result of North American's acts, Semper Fi has sustained damages totaling at least $1,859,440, plus interest at the legal rate. Semper Fi continues to suffer damages because of North American's contractual breaches and will seek leave to amend its complaint once Semper Fi ascertains the full extent of its damages.

## SECOND CAUSE OF ACTION

**(For Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

53.    Semper Fi realleges and incorporates by reference the allegations contained in paragraph 1 through 47 and 49 through 52 above.

54.    Implied in the Policy is a covenant that North American would act in good faith and deal fairly with Semper Fi, would do nothing to interfere with Semper Fi's rights to receive the benefits due under the Policy, and would give at least the same level of consideration to Semper Fi's interests as it gives to its own interests.

55.    North American also has a duty under the Policy, the law, and insurance industry custom, practice, and standards, to conduct a prompt and thorough investigation, including an investigation of all bases that might support Semper Fi's claim for coverage, before asserting coverage defenses or denying coverage.

56.    Instead of complying with these duties, North American acted in bad faith and in conscious disregard of Semper Fi's rights by, among other things:

a.  Failing and refusing to pay for the claimed losses incurred due to the relocation of the Festival;

14

b.  Failing and refusing to pay for the amounts reasonably spent to reduce financial losses covered under the Policy, even though the Policy requires "mitigation" of losses and both the Policy and common law obligate North American to pay amounts that reasonably incurred in an effort to mitigate loss;

c.  Asserting grounds for disputing coverage that it knows are not supported by, and are contrary to, the terms of the Policy, the law, insurance industry custom and practice, the parties' course of dealings, and the facts;

d.  Failing to conduct an adequate investigation into Semper Fi's claim, and asserting grounds for disputing coverage based on its inadequate investigation;

e.  Failing to fully inquire into possible bases that might support coverage for Semper Fi's claim;

f.  By giving greater consideration to its own interests than Semper Fi's interests; and

g.  By otherwise acting as alleged above.

57.  In breach of the implied covenant of good faith and fair dealing, North American did the things and committed the acts alleged above for the purpose of consciously withholding from Semper Fi the rights and benefits to which Semper Fi is entitled under the Policy, and without considering the interests of its insureds at least to the same extent as it did its own interests.

58.  North American's acts are inconsistent with Semper Fi's reasonable expectations, are contrary to established insurance industry custom, practice, and standards, are contrary to legal requirements, are contrary to the express terms of the Policy, and constitute bad faith.

59.  As a direct and proximate cause of North American's breach of the implied covenant of good faith and fair dealing, Semper Fi has sustained damages

15

totaling at least $1,859,440, plus interest at the legal rate. Semper Fi continues to suffer damages because of North American's bad faith and will seek leave to amend its complaint once Semper Fi ascertains the full extent of its damages. Also, pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), the Insureds are entitled to recover all attorneys' fees and costs that they reasonably have incurred, and continue to incur, in their efforts to obtain the benefits of insurance that have been, and continue to be, wrongfully and in bad faith withheld by North American. Semper Fi also is entitled to interest thereon at the maximum legal rate.

60.     Semper Fi is informed and believes, and on that basis alleges, that North American—acting through one or more of its officers, directors, or other corporate employees with substantial independent and discretionary authority over significant aspects of North American's business—performed, authorized, and/or ratified the bad faith conduct alleged above.

61.     North American's conduct is despicable and has been done with a conscious disregard of Semper Fi's rights, constituting oppression, fraud, and/or malice. North American has engaged in a series of acts designed to deny the benefits due under the Policy. Specifically, North American, by acting as alleged above, in light of information, facts, and relevant law to the contrary, consciously disregarded Semper Fi's rights and breached the terms of the Policy, thereby inflicting substantial financial damage on Semper Fi. North American ignored Semper Fi's interests and concerns, with the requisite intent to injure, and acted fraudulently, within the meaning of California Civil Code section 3294. Therefore, Semper Fi is entitled to recover punitive damages from North American in an amount sufficient to punish and make an example of North American and in order to deter similar conduct.

**THIRD CAUSE OF ACTION**

(**For Reformation of Written Instrument Based on Mistake**)

62.     Semper Fi realleges and incorporates by reference the allegations contained in paragraph 1 through 47, 49 through 52, and 54 through 61 above.

63.     To the extent that the Policy does not list Semper Fi as the Assured and does not list the correct Event Description and Date for the Festival, the Policy does not reflect the true intent of the parties.  This result is based on the mutual mistake of the parties.  The parties' true agreement is that the Policy's declarations page would (a) designate Semper Fi Holdings Series LLC as the "Assured" under the Policy and (b) reflect that the Festival as originally scheduled would take place March 22-23, 2019, at the Museum.

64.     If, and to the extent that North American's present contention that the Policy, as written, does not insure Semper Fi or the Festival, is correct, then this result is based on mistake.  Therefore, the Policy should be reformed to provide event cancellation insurance for Semper Fi with respect to the Festival, to the extent necessary, to replace any language in the Policy that North American contends precludes coverage for Semper Fi or the Festival as originally scheduled.

**PRAYER**

WHEREFORE, Semper Fi prays for judgment as follows:

**ON THE FIRST CAUSE OF ACTION**

1.     For damages, plus interest, according to proof at the time of trial;

**ON THE SECOND CAUSE OF ACTION**

2.     For damages, including reasonable attorneys' fees and expenses incurred in obtaining the benefits due under the Policy, plus interest, according to proof at the time of trial;

3.     For punitive damages in an amount to be determined at the time of trial;

**FIRST AMENDED COMPLAINT**

## <u>ON THE THIRD CAUSE OF ACTION</u>

4.     For reformation in accord with Semper Fi's contentions stated above;

## <u>ON ALL CAUSES OF ACTION</u>

6.     For costs of suit herein; and

7.     For such other, further, and/or different relief as may be just and proper.

Dated:  November 4, 2019                    PASICH LLP


By:_____/s/ Shaun H. Crosner_____
        Shaun H. Crosner

        Attorneys for Plaintiff

---

**FIRST AMENDED COMPLAINT**

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff Semper Fi Holdings Series LLC hereby demands a trial by jury in

3 this action.

4 Dated: November 4, 2019     PASICH LLP

5

6         By:   */s/ Shaun H. Crosner*

7           Shaun H. Crosner

8           Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**

# EXHIBIT A

# BINDER

| RISK DETAILS | |
|---|---|
| **Type:** | Event Cancellation (USA/Canada) |
| **Assured:** | Semper Fi Holdings, Series, LLC<br>398 Bond St #1<br>Brooklyn, NY 11231 |
| **Insured Event(s):** | The 2019 Salute the Troops Festival |
| **Period:** | From:  TBD<br>To: March 24, 2019<br>All day(s) inclusive standard local time at location of the Insured Performance or Event |
| **Insured Performance or Event(s): Date(s):** | Multi-day Music Festival located in Riverside, CA from 3/22/2019 – 3/23/2019 |
| **Event Venue:** | March Air Reserve Base; Riverside, CA 92518 |
| **Interest:** | Subject always to the terms, conditions, limitations and exclusions contained herein our endorsed hereon this Insurance will indemnify you, up to the Limit of Insurance, for your loss as a direct result of **cancellation, abandonment, curtailment, postponement,** or **relocation** of the **insured event(s)** to which this insurance applies. |
| **Perils:** | As per attached wording |
| **Limit of Indemnity:** | $1,859,440 representing gross revenue |
| **Deductible:** | NIL |
| **Loss Payee:** | Vivendi Ticketing U.S., LLC (SeeTickets) |
| **Territorial Limits:** | Worldwide |
| **Conditions:** | As defined in the attached Specimen Wording and Endorsements which would cover losses from perils including but not limited to earthquakes, wildfires, communicable disease, national mourning, labor strikes, civil commotion, terrorism (if purchased) and severe adverse weather (as described in the Specimen Wording.) **NON-APPERANCE OF ANY PERFORMING ACT IS NOT COVERED**. |
| **Policy Language:** | It is understood and agreed by both the Insurers and the Assured that the policy language shall be English |
| **Notice of Loss:** | Ascend Insurance Brokerage<br>14850 Montfort Dr., Ste 131-LB9<br>Dallas, TX 75254 |
| **Insurer Contract Documentation:** | This contract details the contract terms entered into by the insurer(s) and constitutes the contract document. |
| **Base Premium (At Rate 1.5%)** | $ 27,892 – Incls removing the terrorism exclusion (Section 2 paragraph 3) |
| **NY Surplus Lines Taxes & Fees (3.6% plus .17% stamping fee)** | $ 1078.53 |
| **Total Premium** | $ 28,970.53 |



| INFORMATION |
| --- |
| The **2019 Salute the Troops Music Festival** is a 2-day music festival located in Riverside, CA.  The festival debuted in 2019. |
| **Previous Losses:**<br><br>None Declared to Ascend Insurance Brokerage and carrier |
| **Presented to Insurers:**<br><br>Event Cancellation Application<br><br>Outdoor Event Questionnaire<br><br>Budget |

Please note that the adverse weather coverage provided by the Policy is tied to conditions that pose a serious threat to the safety of the attendees or make the venue impossible to use due to physical damage or inaccessibility. Uncomfortable weather (i.e. rain or heat) is not covered.

# EXHIBIT B

# BINDER

| RISK DETAILS | |
|---|---|
| **Type:** | Event Cancellation (USA/Canada) |
| **Assured:** | Semper Fi Holdings, Series, LLC<br>398 Bond St #1<br>Brooklyn, NY 11231 |
| **Insured Event(s):** | The 2019 Salute the Troops Festival |
| **Period:** | From:  TBD<br>To: March 24, 2019<br>All day(s) inclusive standard local time at location of the Insured Performance or Event |
| **Insured Performance or Event(s): Date(s):** | Multi-day Music Festival located in Riverside, CA from 3/22/2019 – 3/23/2019 |
| **Event Venue:** | March Field Air Museum; Riverside, CA 92518 |
| **Interest:** | Subject always to the terms, conditions, limitations and exclusions contained herein our endorsed hereon this Insurance will indemnify you, up to the Limit of Insurance, for your loss as a direct result of **cancellation, abandonment, curtailment, postponement,** or **relocation** of the **insured event(s)** to which this insurance applies. |
| **Perils:** | As per attached wording |
| **Limit of Indemnity:** | $1,859,440 representing gross revenue |
| **Deductible:** | NIL |
| **Loss Payee:** | Vivendi Ticketing U.S., LLC (SeeTickets) |
| **Territorial Limits:** | Worldwide |
| **Conditions:** | As defined in the attached Specimen Wording and Endorsements which would cover losses from perils including but not limited to earthquakes, wildfires, communicable disease, national mourning, labor strikes, civil commotion, terrorism (if purchased) and severe adverse weather (as described in the Specimen Wording.) **NON-APPERANCE OF ANY PERFORMING ACT IS NOT COVERED**. |
| **Policy Language:** | It is understood and agreed by both the Insurers and the Assured that the policy language shall be English |
| **Notice of Loss:** | Ascend Insurance Brokerage<br>14850 Montfort Dr., Ste 131-LB9<br>Dallas, TX 75254 |
| **Insurer Contract Documentation:** | This contract details the contract terms entered into by the insurer(s) and constitutes the contract document. |
| **Base Premium (At Rate 1.5%)** | $ 27,892 – Incls removing the terrorism exclusion (Section 2 paragraph 3) |
| **NY Surplus Lines Taxes & Fees (3.6% plus .17% stamping fee)** | $ 1078.53 |
| **Total Premium** | $ 28,970.53 |



| INFORMATION |
|---|
| The **2019 Salute the Troops Music Festival** is a 2-day music festival located in Riverside, CA.  The festival debuted in 2019. |
| **Previous Losses:**<br>None Declared to Ascend Insurance Brokerage and carrier |
| **Presented to Insurers:**<br>Event Cancellation Application<br>Outdoor Event Questionnaire<br>Budget |

Please note that the adverse weather coverage provided by the Policy is tied to conditions that pose a serious threat to the safety of the attendees or make the venue impossible to use due to physical damage or inaccessibility. Uncomfortable weather (i.e. rain or heat) is not covered.

# EXHIBIT C





**SP 5 369 0514**

Insurance Products underwritten by Westport Insurance Corporation, First Specialty Insurance Corporation, North American Capacity Insurance Company, North American Specialty Insurance Company, North American Elite Insurance Company, Washington International Insurance Company, or Swiss Re International S.E.

Swiss Re Corporate Solutions offers innovative, high-quality insurance capacity for single and multi-line programmes worldwide, either on a standalone basis or as part of structured and tailor-made solutions. In addition, it provides customised risk transfer solutions to mid-sized and large, multinational corporations across the globe to assist in mitigating their risk exposure. Swiss Re Corporate Solutions serves more than 50 000 customers across nearly 40 offices worldwide and is backed by the financial strength of the Swiss Re Group. For more information about Swiss Re Corporate Solutions, please visit: www.swissre.com/corporatesolutions

©2014 Swiss Re. All rights reserved.

# *North American Capacity Insurance Company*

## LOSS REPORTING PROCEDURES

Welcome to North American Capacity Insurance Company, a member company of Swiss Re Corporate Solutions. We would like to take this opportunity to share our loss-reporting procedures.  In the event of a loss or potential loss, please immediately complete and forward a First Notice of Loss on an ACORD Loss Form.  If you do not use the ACORD Loss Form please otherwise provide the following information:

- Your Name and Contact Information (including e-mail address)
- Name of Insured/Policy Holder and/or Policy Number
- Contact Details of Insured Representative and Preferred Method of Contact
- Date of Loss
- Location of Loss
- Brief Summary of the Loss
- Contact Name(s) and e-Mail Address(es) for New Loss Acknowledgement Letter

Forward the New Loss Details by one of the following methods:

      By e-mail:         ClaimsNACasualty_CorporateSolutions@swissre.com

      By Mail:         North American Capacity Insurance Company
                            Attention:  Corporate Solutions Claims
                            1200 Main St, Suite 800
                            Kansas City, MO  64105

Please visit us on our website:  www.swissre.com/corporatesolutions

This notice is for information only and does not become a part or condition of the policy.

CRP (11-18)

### *North American Capacity Insurance Company*

**THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE INSURANCE DEPARTMENT PERTAINING TO POLICY FORMS.**

## North American Capacity Insurance Company

### EVENT CANCELLATION INSURANCE DECLARATIONS

**Producer's Name and Address:**

Steve Perlini
Reel Media, LLC
160 Gould St., Ste. 121
Needham, MA 02494

**Insurer:**

North American Capacity Insurance Company
1200 Main Street, Ste. 800
Kansas City, MO 64105
(hereinafter referred to as the 'Insurer')

**Assured:**

Semper Fi Productions, LLC
398 Bond Street #1
Brooklyn, NY 11231
(hereinafter referred to as the 'Insured')

**Policy Number**
COM100072700

**Coverage**
Event Cancellation Coverage

**Policy Period**
**Insurance Effective Date**:   February 12, 2019
**Insurance Expiration Date**:   March 24, 2019
Both dates 12:01 a.m. Standard Time at the location of the Insured Event

**Event Description and Date(s)**
Salute The Troops Music Festival taking place March 22 – 23, 2019 at the Glen Helen Amphitheater in San Bernardino, CA.

**Loss Payee**
Vivendi Ticketing U.S., LLC
2808 Elm Street.
Los Angeles, CA 90065

**Limit of Indemnity (100%)**
Up to, but not exceeding USD 1,859,440

**Premium (100%)**
USD 27,292   Premium
USD      600   TRIPRA Premium
USD 27,892   Total Premium

**Insurer's Share**
100%

**Premium Taxes**
NOTICE:  Premium herein is net of premium tax. North American Capacity Insurance Company (NAC) is an authorized non-admitted carrier. Under the Excess & Surplus Lines regulations, the surplus lines producer is liable to declare and pay any and all premium tax. NAC is not liable for such taxes.

**Forms and Endorsements:**   The following are made part of this policy
- CT0002 0516 Declarations
- CT0008 1116 Policy Form
- CT0005 0416 Terrorism Coverage Extension
- SP4641 0115 Cap on Losses From Certified Acts of Terrorism
- SP5694 1012 International Trade or Economic Sanctions
- SP6015 0213 Service of Suit
- SP6069 0115 Disclosure Pursuant to Terrorism Risk Insurance Act

Date Issued: February 19, 2019

## North American Capacity Insurance Company

### EVENT CANCELLATION POLICY

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The Named Insured is the only entity entitled to receive indemnification under this policy.  The words "we," "us" and "our" refer to the company providing this insurance.  Other words and phrases that appearing in boldface print have special meaning.  Refer to Section III. – DEFINITIONS.

In consideration of the payment of the premium by you and in reliance upon the statements in your Application incorporated herein by reference, we agree with you subject to all of the terms, exclusions and conditions of this policy, as follows:

### SECTION I – INSURING AGREEMENT

**A.     EVENT CANCELLATION**

We will indemnify you, up to the Limit of Insurance, for your loss as a direct result of **cancellation, abandonment, curtailment, postponement,** or **relocation** of the **insured event** to which this insurance applies.

**B.     APPLICATION OF COVERAGES:**

In order for insurance to apply to Section I, all of the following conditions must be met:

**1.**     the loss must be the direct result of an unexpected cause beyond your control and any party who is contracted by you to perform a function critical to the successful fulfillment of the Insured Event other than a principal speaker or entertainer.

**2.**     the loss must not be the direct or indirect result of any excluded cause as shown in Section II. –Exclusions of this insurance; and

**3.**     you must comply with all other terms and conditions of this policy.

**C.     CALCULATION OF LOSS:**

Subject to the limit of insurance, we will indemnify you for the greater of:

**1.**     The total of **expenses** incurred, less any recoveries obtained, and less **gross revenue** retained after refunds, whether such refunds are contractual or voluntary; or

**2.**     The loss of **gross revenue** (including **gross revenue** returned, whether contractual or voluntary) that would have been received had the **insured event** taken place as originally scheduled**,** less any recoveries made and **expenses** not incurred.

**D.     EXTENSION OF COVERAGE:**

**Extra Expense –** If a loss applies, this policy is extended to include direct and necessary additional **expenses** incurred by you over and above the total costs that would normally have been incurred to conduct the **insured event** in order to continue the normal operations of the **insured event**, subject to prior written approval by us. The Limit of Insurance for this coverage is included in the Limit of Insurance shown in the Declarations. However, in the event the Limit of Insurance is exhausted, we will pay an additional limit, up to $100,000 or a higher amount if agreed to by us and evidenced by endorsement attached to and forming a part of this Policy.

## SECTION II –EXCLUSIONS

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**1.    War and Military Action**

    **a.**    War, including undeclared or civil war;

    **b.**    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.**    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.    Nuclear Hazard**

    Nuclear reaction or radiation, or radioactive contamination, however caused.

    But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**3.    Terrorism**

    Any act of terrorism or threat or fear thereof regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

    As used in this exclusion an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat or fear thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

    This Insurance also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism or threat or fear thereof.

**4.    Biological / Chemical / Nuclear**

    The actual or threatened malicious use of pathogenic or poisonous nuclear, biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**5.    Fraudulent, Dishonest or Criminal Acts**

    Any loss resulting from, or arising out of, fraudulent or dishonest or criminal act or acts committed by you or any of your employees and also others to whom property may be entrusted.

    This exclusion shall not apply to loss or damage to personal property while such property is in the custody of common carriers.

6.  **Financial Failure**

   a.  Withdrawal, insufficiency or lack of finance however caused;

   b.  The financial failure of any venture;

   c.  Lack of adequate receipts, sales or profits of any venture;

   d.  Variations in the rate of exchange, rate of interest or stability of any currency;

   e.  Financial default, insolvency, or failure to pay any person, firm or corporation.

7.  **Lack of Support**

   a.  Lack of adequate response, support or withdrawal of such support by any entity;

   b.  Lack of, or inadequate attendance or insufficient interest prior to attendance.

8.  **Failure to Make Necessary Arrangements**

   Your failure to:

   a.  make all the preliminary arrangements essential to ensure that a satisfactory **insured event** can be held on the scheduled date.  Preliminary arrangements shall include arrangements as a prudent organizer would have made considering the venue size, type of event and the period of time before the open date;

   b.  ensure all licenses, visas, permits and authorizations are current for the term of this policy, and that all contractual arrangements have been confirmed in writing; or

   c.  observe and comply with all federal, state, or local laws, ordinances and regulations.

9.  **Pre-existing Circumstances**

   Circumstances existing or threatened at inception of the policy which were known to you or any of your officers, directors, partners, or risk managers as being circumstances that could possibly result in a loss under this policy, unless such circumstances were advised to us in writing by you or any of your officers, directors, partners or risk managers and we agree in writing to accept such circumstances.

10.  **Adverse Weather**

   Adverse weather, unless you can prove to us that such adverse weather commenced during the Policy Period and involved conditions that:

   a.  posed a serious threat to the safety of those individuals attending, performing, or setting-up the **insured event**, or

   b.  made it physically impossible to safely access or use the **venue** due to physical damage of the **venue** or its environs.

   This exception to the exclusion shall not apply if covering any stage or electrical equipment used in the **insured event** would not have prevented the loss, unless high winds or other reasons make covering the stage and electrical equipment impracticable.

11.  **Non-Appearance**

   The non-appearance of any individual or group.

**12.     Breach of Duty of Care**

Your lack of care, diligence or prudent behavior, the result of which would increase the risk, and/or likelihood of a loss, hereunder.

**13.     Contract Disputes**

Any contractual dispute or breach of a written or verbal contact or agreement by you.

**14.     Material Alterations**

Material alterations or variance of **insured event(s)** without the prior approval of us.

**15.     Governmental/Regulatory Violations**

Seizure or destruction under quarantine or customs regulations, confiscation, nationalization or requisition or destruction of or damage to property, by or under the order of any government or public or local authority, or the handling of contraband or the engaging in illicit trade or transportation.

**16.     Seepage, Pollution and/or Contamination**

Seepage and/or pollution and/or contamination unless it is discovered during the Policy Period and is a direct cause of a loss covered hereunder.

## SECTION III – DEFINITIONS

**1.     Abandonment** means your inability to keep open the **insured event** during a period subsequent to regularly scheduled date and time of commencement of the **insured event**.

**2.     Cancellation** means your inability to commence the **insured event** at the regularly scheduled date and time of commencement of the **insured event**.

**3.     Curtailment** means your inability to open or keep open the **insured event** for its original published duration, size or scope.

**4.     Expenses** mean your costs and charges in organizing, running and providing services for the **insured event.** It is understood and agreed that Expenses can include guarantees (whether such guarantee due the performer is contractual or voluntary) for artists or performers who are ready, willing, able to, and present at the Venue to appear at the insured event. **Gross revenue** means all monies paid or payable to you from every source arising out of the **insured event.**

**5.     Insured event(s)** means the event or events covered by this policy as shown in the Declarations or in the attached schedule of insured events.

**6.     Postponement** means the unavoidable deferment of the **insured event** to another time.

**7.     Relocation** means the removal of the **insured event** to an alternative **venue**.

**8.     Venue** means the location corresponding to the **insured event** where the **insured event** is scheduled to occur as shown in the Declarations.

## SECTION IV – CONDITIONS

1. **Limit of Insurance**

   The most we will pay for loss or damage is the applicable Limit of Insurance shown in the Declarations.

2. **Duties in the Event of a Loss**

   You must see that the following are done in the event of covered loss or damage:

   a.   Upon the discovery of any event likely to give rise to a claim under this policy you shall give us prompt notice.  Include a description of such loss;

   b.   You shall at all times do all things necessary to avoid or diminish a loss under this policy;

   c.   You shall cooperate with us and, upon our request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, in the investigation or settlement of the claim;

   d.   Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 30 days after our request.  We will supply you with the necessary forms;

   e.   We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or claim, including an insured's books and records.  In the event of an examination, an insured's answers must be signed.

3. **Claim Payments**

   We will pay you all loss covered under this policy within 60 days after our receipt of your signed, sworn proof of loss to which we agree.

4. **Concealment, Misrepresentation or Fraud**

   This policy is void in the case of fraud by you as it relates to this policy at any time.  It is also void if you, at any time, intentionally conceal or misrepresent a material fact concerning, this policy or application, or any proof of loss.

5. **Subrogation**

   We shall be subrogated to your right of recovery from any party, whether before or after payment of a loss, at our sole discretion.  In the event of any payment under this policy, we shall be subrogated to the extent of such payment to all of your rights of recovery and the you shall execute all papers required and shall do everything that may be necessary to secure such rights.

6. **Other Insurance**

   No other insurance shall be effected by you to protect the interest insured hereunder without our prior written approval.  In the event that such other insurance is effected, this insurance shall be excess of such other policy of insurance.

7. **Premium**

   As a condition precedent to coverage provided under this policy, the premium must be paid on or before the premium due date shown on the Declarations corresponding each **insured event.**  The premium is fully earned as of the commencement date of the **insured event** under the policy and will not be returned by the us.

8.      **Cancellation**

This policy may not be cancelled by you or us, except that we may cancel in the event of your failure to pay the premium when due.  In the case of such cancellation, all premium previously received by us shall be deemed earned and no return premium shall payable to you.

9.      **Assignment**

This policy may not be assigned in whole or in part without our prior written consent.

10.     **Records**

You shall keep accurate records containing all relevant information and particulars of the **insured event**.  We reserve the right to audit your books and records in the event of a loss.

11.     **Premium Not an Expense**

The premium paid on this policy is deemed not to be an **expense** in the assessment of any claim hereunder.

12.     **Salvage and Recoveries**

All salvages, recoveries and payments excluding proceeds from subrogation recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and shall accrue entirely to us until the sum paid by us has been recovered.

13.     **Conformity to Statute**

Terms of this policy in conflict with the written laws of any state in which this policy is issued, which are applicable to this policy, are changed to conform to such laws.

14.     **Territory**

This policy covers **insured events** for which the **venue** is located worldwide.

15.     **Obligation to Rearrange**

You have an obligation to use your best efforts to rearrange the any **insured event** that has been subject to **cancellation** or **abandonment** in order to mitigate any loss covered hereunder.

16.     **Headings**

Headings used in this policy are for reference purposes only and are not intended to be a part of or to affect the meaning or interpretation of this policy.

17.     **Suit Against the Company**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law unless you have complied with all the provisions of this policy and unless commenced suit within twelve (12) months after the loss occurs.

## North American Capacity Insurance Company

Endorsement No. 1

### TERRORISM COVERAGE EXTENSION

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### <u>SCHEDULE</u>

Additional Premium:     **$        0**

---

This endorsement modifies insurance provided by the policy:

In consideration of the additional premium charged as shown in the above Schedule, Paragraph **3. Terrorism**, of **Section II – Exclusions** is deleted in its entirety.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

## North American Capacity Insurance Company

Endorsement No. 2

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following provision is hereby attached to and made a part of this policy:

EVENT CANCELLATION INSURANCE POLICY

**A.**   **Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to the Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.**   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.**   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

TRIPRA contains a USD100 billion cap limiting United States government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds USD100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed USD100 billion, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.**   **Application of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by the Nuclear Exclusion or the War Risk Exclusion.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

## North American Capacity Insurance Company

Endorsement No. 3

**INTERNATIONAL TRADE OR ECONOMIC SANCTIONS**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

EVENT CANCELLATION INSURANCE POLICY

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of any jurisdiction applicable to that insurer.

All other terms and conditions of this policy remain unchanged.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

SP 5 694 1012

# *North American Capacity Insurance Company*

Endorsement No. 4

## SERVICE OF SUIT ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is understood and agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.  The foregoing shall not constitute a waiver of the right of the Company to remove, remand, or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state of United States pertinent hereto.  In any suit instituted against them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the Statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company hereby designates the President of North American Capacity Insurance Company, 1200 Main Street, Suite 800, Kansas City, MO 64105, as the person to who the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

SP 6 015 0213

Page 1 of 1

## North American Capacity Insurance Company

Endorsement No. 5

**DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

**SCHEDULE**

---

**Terrorism Premium (Certified Acts)  $        600**

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

EVENT CANCELLATION INSURANCE POLICY

**Additional information, if any, concerning the terrorism premium:**

**The above premium does not include any charges for the share of terrorism losses reimbursed to the insurer by the United States Government under the Act.**

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**A.     Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B.      Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage as follows of that portion of the amount of such insured losses that exceeds the applicable insurer retention:

- 85% for losses occurring in 2015;
- 84% for losses occurring in 2016;
- 83% for losses occurring in 2017;
- 82% for losses occurring in 2018;
- 81% for losses occurring in 2019;
- 80% for losses occurring in 2020.

However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.      Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

**In Witness Whereof**, *the issuing Company has caused this policy to be signed officially below*.

_____
President

_____
Secretary

*North American Capacity Insurance Company*

## North American Capacity Insurance Company

Endorsement No. 6

### POLICY CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

This endorsement modifies insurance provided under the following:

EVENT CANCELLATION INSURANCE POLICY

Event Description and Date(s)

Is (Are) changed to read:  (☐ see additional page(s))

Salute the Troops Music Festival taking place March 22 – 23, 2019 at The Fox Theater Pomona in Pomona, CA.

The above amendments result in a change in the premium as follows:

☒ No Premium Change　　☐ To Be Adjusted　　Additional Premium:　　　Return Premium:

$　　　　　　　$

Total Due:  $ N/A

_____
Authorized Representative

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:  COM100072700

Endorsement Effective Date:  March 12, 2019

Named Insured:  Semper Fi Productions, LLC